Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5177 | **DATE** | 10/7/2003 |
| **CASE TITLE** | Starzyk vs. American President Lines, Ltd. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment [13-1] is granted. Judgment entered in favor of the defendant. All future dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | OCT 0 9 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 21 |
| X | Mail AO 450 form. Mailed by MD. | U.S. DISTRICT COURT CLERK 03 OCT -8 AM 5:11 | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/7/2003 date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

| | ) |
|---|---|
| MIESZYSLAW STARZYK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 02 C 5177 |
| | ) Judge Joan H. Lefkow |
| AMERICAN PRESIDENT LINES, LTD., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mieszyslaw Starzyk ("Starzyk"), a sixty year old American citizen who was born and raised in Poland, filed an amended complaint against his former employer, American President Lines, Ltd. ("APL"), alleging that APL terminated Starzyk on account of his age and race (Polish) in violation of the Age Discrimination Employment Act("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and Title 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Starzyk also alleges that APL terminated him on account of his wife's disability in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* Starzyk filed charges with the United States Equal Opportunity Employment Commission ("EEOC") on or about April 4, 2002. The EEOC issued a Notice of Right to Sue which Starzyk received on June 17, 2002. Starzyk filed this suit on July 23, 2003. Before this court is APL's motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The court has jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), 29 U.S.C. § 626, and 42 U.S.C. §§ 1981 and 12117. For the reasons set forth below, the court grants the motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must apply the summary judgment standard with "added rigor" in employment discrimination cases, where intent is the central issue. *Kralman v. Illinois Dept. of Veterans' Affairs*, 23 F.3d 150, 152 (7th Cir. 1994).

## FACTS

Local Rule 56.1(a)(3) requires the party moving for summary judgment to submit a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law. Local Rule 56.1(b)(3)(A-B) requires

2

the party opposing summary judgment to submit a response to the moving party's statement and a statement of any additional facts that require the denial of summary judgment. Rule 56.1(b)(3)(B) states, "All material facts set forth in the statement required of the moving party will be deemed admitted unless controverted by the statement of the opposing party." APL has filed its required statement of undisputed material facts. However, Starzyk has not filed a response to APL's statement nor a statement of additional facts. Thus, all material facts set out in APL's statement of undisputed facts are deemed admitted by Starzyk.

APL hired Starzyk in 1981. Starzyk left APL in 1986 to return to Poland. In November, 1993, Starzyk was rehired by APL where he worked until his termination in November 2000. During both periods that Starzyk worked for APL, his supervisor was Jim Barry, who is part Polish. APL was aware of Starzyk's Polish heritage when it rehired him in 1993. (Def. L.R. 56.1 ¶ 5.)

The APL facility where Starzyk worked has three distinct work classifications–the dock, the shop, and the yard. Work on the dock involves receiving containers of freight. Work in the shop involves maintaining and repairing APL containers and chassis. Work in the yard involves driving forklifts and tractors as well as clerical work and other duties at the gate where trucks enter the premises. (Def. L.R. 56.1 ¶ 6.) At the gate, APL yard employees meet truck drivers and discuss pick-ups and deliveries. The yard employee inspects the containers, completes paperwork, and verifies information on the computer. Yard employees are trained for computer work and are given an operating manual to read. (Def. L.R. 56.1 ¶ 7.) From the time of his hire until 2000, Starzyk was assigned to the shop as a mechanic. His work involved the repair of trailers. (Def. L.R. 56.1 ¶ 10.)

The APL facility is covered by a collective bargaining agreement between APL and Teamsters Local 781. Starzyk was a member of the union and in the bargaining unit. The collective bargaining agreement contained provisions for seniority, health and welfare benefits, a pension fund, a clause prohibiting discrimination because of race, creed, color, national origin, sex or age in all matters affecting employment, and a mandatory grievance and arbitration procedure. (Def. L.R. 56.1 ¶ 8.)

Article III(C) of the collective bargaining agreement provides

In the event of a decrease or increase in the number of employees employed by the Company, 'in a particular classification,' seniority on a company wide basis shall be the governing factor and employees shall be laid off according to Company wide seniority as defined in (A) above and shall be called back in the reverse order in which they were laid off, *provided the employees are qualified to perform the work.* In the event of a dispute involving seniority in layoff, before action is taken by the company, there must be an agreement with the Union.

(Def. L.R. 56.1 ¶ 9, emphasis added.) APL maintained seniority lists for bargaining unit employees by classification and by company wide seniority. (*Id.*)

In April 2000 APL found it necessary to layoff six mechanics. (Def. L.R. 56.1 ¶ 12.) The reductions were conducted in accordance with the seniority provisions of the company's collective bargaining agreement. Employees slated for layoff in their work classifications were able to use their company wide seniority to transfer into other classifications and displace less senior employees ("bumping rights"). The shop employees with the lowest seniority were, in ascending order, Elpidio Serna (Mexican[1], 45 years old), Chester Walton ("American," 45 years old), Mark Mucha (Polish, 26 years old), Paul Medeja (Polish, 26 years old), Starzyk, and Andy

---

[1]The parenthetical designations refer to ethnicity, not citizenship. By "American," the court presumes a reference to Northern European ethnicity.

4

Mazur (Polish, 41 years old). (Def. L.R. 56.1 ¶ 13.) Serna took severance and left the company. Walton, Mucha, Medeja, and Mazur exercised their seniority and transferred to the yard. Starzyk exercised his seniority and transferred to the dock. (Def. L.R. 56.1 ¶ 14). As a result of these seniority moves, two employees were laid off from the yard, and Kevin Knott ("American," 29 years old) was laid off from the dock and replaced by Starzyk. (Def. L.R. 56.1 ¶ 15.)

In September 2000 another layoff occurred, this time on the dock. (Def. L.R. 56.1 ¶ 16.) Again, the reductions were conducted in accordance with the seniority provisions of the company's collective bargaining agreement. The dock employees with the lowest seniority were Victor Torres ("American," 27 years old), Frank Fuller ("American," 49 years old), and Starzyk. Torres and Fuller used their overall seniority to transfer to the yard. Starzyk moved to a temporary position in the shop that was open because another employee was on disability leave. (Def. L.R. 56.1 ¶ 17.)

At the time of the September 2000 layoff, Jim Barry and terminal manager Bill Hoole discussed Starzyk's ability to perform yard work if he desired to transfer to the yard. They determined that Starzyk could not because the job required conversing with truck drivers who came to the yard and also required paperwork and the use of a computer. They felt that the ability to understand and converse in English was necessary, and Starzyk had demonstrated that he lacked that ability.[2] It was not necessary to deny Starzyk bumping rights to the yard because he did not exercise his bumping rights at that time. Barry believed Starzyk did not exercise his

---

[2]EEOC investigator Konrad Batog, who spoke Polish and took Starzyk's evidence, visited the APL facility and observed the work in the yard. His investigative report concludes that a functional knowledge of English is required for the job and that Starzyk did not speak English well enough to work in the yard. (Def. L.R. 56.1 ¶ 34.)

5

bumping rights because he recognized that he lacked the proficiency in English required for work in the yard. (Def. L.R. 56.1 ¶ 18.)

In November 2000 another workforce reduction occurred, and Starzyk was terminated. Although he did not specifically attempt to use his seniority to "bump" into the yard, he would not have been permitted to because of his lack of proficiency in English. Also terminated was Chester Walton ("American," 45 years old), who was bumped from his yard job by a more senior dock employee, and Richard Rubio ("American," 33 years old), who was bumped from the yard by a more senior shop employee. (Def. L.R. 56.1 ¶ 21.) However, a substantial proportion of the bargaining unit employees continued to work. At least 29.4% of the remaining bargaining unit employees were of Polish heritage (ten of thirty-four employees) and 20.6% of the remaining bargaining unit employees were over fifty years old (seven of thirty-four employees). (Def. L.R. 56.1 ¶ 22, 23.) Starzyk did not file a grievance concerning any of the transfers or the employment termination nor did any other employee file a grievance following the layoffs in 2000. Def. L.R. 56.1 ¶ 24.) Subsequent to his termination, Starzyk accepted $500 in severance pay. (Def. L.R. 56.1 ¶ 25.)

Starzyk's wife has a severe case of rheumatism and an arthritic-like condition, which began in 1997 or 1998. In 1999, she began incurring large medical bills that were covered by the Teamsters' insurance fund. (Def. L.R. 56.1 ¶ 26.) APL contributes an amount set by the collective bargaining agreement to the union's health insurance trust fund. The contribution is not affected by the amount of the claims, and the company has no responsibility to administer the trust fund. (Def. L.R. 56.1 ¶ 28.) APL was unaware of Starzyk's wife's condition or the medical bills. (Def. L.R. 56.1 ¶ 29.)

## DISCUSSION

A plaintiff may establish race discrimination under 42 U.S.C. § 1981 and age discrimination under the ADEA through direct or indirect proof. *Bennett* v. *Roberts*, 295 F.3d 687, 694-95, 697-98 (7th Cir. 2002)(race); *Huff* v. *UARCO, Inc.*, 122 F.3d 374, 379 (7th Cir. 1997)(age). Since there is no direct evidence of discrimination in this case, the court applies the burden shifting method set out in *McDonnell-Douglas Corp.* v. *Green*, 411 U.S. 792 (1973). Under this method, the plaintiff bears the initial burden of producing evidence to sustain a *prima facie* case of discrimination. If the plaintiff meets this burden, the employer must then produce a legitimate, non-discriminatory reason for his action. If the employer offers a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to present evidence that the employer's proffered reason is pretextual. *Johnson* v. *Zema Systems Corp.*, 170 F.3d 734, 742 (7th Cir. 1999).

To establish a *prima facie* case, Starzyk must show that (1) he is a member of a protected class; (2) he was qualified for the job in question or was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees not in his protected class. *Johnson*, 170 F.3d at 742-43. It is unnecessary for the court to decide whether Polish is a race for the purposes of section 1981.[3] Even assuming that Starzyk is a member of a protected class due to his Polish

---

[3]*See Bisciglia* v. *Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 230 (7th Cir. 1995), relying on *Saint Francis College* v. *Alkhazraji*, 481 U.S. 604 (1987). (The proper inquiry is not whether (in the instant case, Polish people) are considered to be a separate race by today's standards, but whether, at the time § 1981 was adopted, they constituted a group of people that Congress intended to protect.)

ancestry and his age, he cannot establish a *prima facie* case because he has not raised a genuine issue of material fact regarding the second and fourth elements. The undisputed facts show that Starzyk lacked the proficiency in English necessary to perform work in the yard. Thus, Starzyk cannot establish that he was qualified for a job in the yard. Furthermore, the undisputed facts do not show that Starzyk was treated less favorably than similarly situated employees not in his protected class. Several substantially younger, non-Polish employees were terminated as a result of APL's reduction in force, while at least 29.4% of the bargaining unit employees that remained were of Polish heritage (ten of thirty-four employees) and 20.6% were over fifty years old (seven of thirty-four employees). Thus, Starzyk has failed to establish a *prima facie* case of race or age discrimination.

Starzyk does not even mention the ADA claim in his response to APL's motion for summary judgment, but it is clear that he cannot establish a case of disability discrimination. The undisputed facts show that APL did not know about Starzyk's wife's disability, that APL has nothing to do with medical claims since they are handled by the Teamsters' trust fund, and that APL's contribution to the trust fund is set by contract and is not related to the medical bills of its employees. Thus, there is no evidence whatsoever that APL terminated Starzyk because of his wife's disability.

## ORDER

Wherefore, for the reasons stated above, APL's motion for summary judgment is granted (#13). The clerk is instructed to enter judgment in favor of the defendant. This case is terminated.

Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: October 7, 2003

8